**NON PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1386
_____

UNITED STATES OF AMERICA,

v.

DARRON THOMAS
Appellant

_____

On Appeal from the United States District Court for the Eastern District of Pennsylvania
D.C. No. 2:1-cr-00416-001
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 12, 2024

Before: RESTREPO, MONTGOMERY-REEVES, and AMBRO *Circuit Judges*

(Filed: March 7, 2025)
_____

OPINION[*]
_____

RESTREPO, *Circuit Judge*

Appellant Darron Thomas was convicted of assaulting, resisting, and impeding a federal

officer in violation of 18 U.S.C. § 111(a)(1). Thomas now appeals his conviction, arguing that

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

the District Court's jury instructions precluded the jury from considering his theory of self-defense.  For the following reasons, we will affirm the conviction and sentence imposed by the District Court.[1]

I.

On September 28, 2021, Darron Thomas visited the office of the Clerk of Courts for the Eastern District of Pennsylvania in the James Byrne U.S. Federal Courthouse.  While there, Thomas became increasingly belligerent, and court security officers and a deputy marshal repeatedly told him to leave.  Thomas eventually left the Clerk's office and headed to the courthouse lobby.  He continued to shout and create a disturbance.  At this point, deputy marshals called for backup from uniformed officers of the Federal Protective Service ("FPS").

FPS Inspector Devin Wagerman and FPS Police Officer Anthony Clemente arrived at the scene in full police uniforms, after another officer had directed them to "follow the screams." Appx. 1046.  They spoke with Thomas in hopes that he would leave the premises, but he refused and continued to yell.  After Wagerman told Thomas "his time [was] up," Thomas threw his hands in the air, and Wagerman stepped towards him.  Appx. 1048.  At this point, Thomas abruptly lowered his left arm and shoved Wagerman in the chest.  Thomas continued to resist several deputies and officers as they attempted to detain him.  Finally, after a brief struggle, Thomas was taken into custody.  The entire encounter—including Thomas's physical contact with Wagerman—was captured on video surveillance.

---

[1] Because we affirm based on the jury instruction issue, we need not address the arguments in Thomas's pro se briefs, as his counsel has not moved to file supplemental briefs raising those claims.  *See United States v. Turner*, 677 F.3d 570, 579 (3d Cir. 2012).

At trial, Thomas claimed he acted out of self-defense, arguing that Wagerman made sexual advances towards him when detaining him. Specifically, Thomas testified that Wagerman's position behind him reminded him of how he approaches his "special someone" when he is trying to "send [a] signal" that he is in a sexual mood. Appx. 1255. Thomas told the jury he could "feel [Wagerman's] erect penis" and shoved him because he was "never going to wait for [Wagerman] to stick his tongue in [his] ear." *Id.* This alleged interaction between Thomas and Wagerman occurred over the course of about three seconds. *See* Appx. Vol. V at 0:08:02–0:08:05.

The District Court denied both Thomas's proposed jury instructions as well his objections to the Court's standard jury instructions and delivered its charge. In its instructions, the District Court defined the claim of self-defense as follows:

> The burden of proof is upon the Government to prove beyond a reasonable doubt that the Defendant did not act in self-defense. If the Defendant knew of the official identity or purpose of Federal Protective Service Inspector Wagerman, then the Defendant has no valid claim of self-defense. A person has no right to resist arrest . . . if the person is aware [of] the official identity and purpose of the arresting officer. If on the other hand, you find that the Defendant had no knowledge of the official identity or purpose of the Federal Protective Service Inspector Wagerman and that he reasonably believed he was the subject of the hostile, imminent or sexual attack against his person by Federal Protective Service Wagerman, then he was entitled to use reasonable force to defend himself.

Appx. 1372–73. Thomas made no further objections to the self-defense instruction. After receiving these instructions, the jury returned a guilty verdict.

II.[2]

---

[2] The District Court had subject-matter jurisdiction over this matter pursuant to 18 U.S.C. § 3231. We have jurisdiction over the District Court's judgment of conviction under 28 U.S.C. § 1291.

We exercise plenary review when determining whether the jury instructions stated the proper legal standard and consider the failure to give a particular instruction or wording for abuse of discretion. *United States v. Jimenez*, 513 F.3d 62, 74 (3d Cir. 2008) (quoting *United States v. Leahy*, 445 F.3d 634, 642 (3d Cir. 2006)). We assess "whether, viewed in light of the evidence, the charge as a whole fairly and adequately submit[ted] the issues in the case to the jury." *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995) (quotation omitted). "[W]e consider the totality of the instructions and not a particular sentence or paragraph in isolation." *Jimenez*, 513 F.3d at 74–75 (quotation omitted).

Thomas challenges the District Court's self-defense instruction, particularly the language instructing the jury to assess whether he "knew of the official identity or purpose of" Officer Wagerman. Appellant Br. 18. Thomas argues that it instructed the jury that if Thomas knew Wagerman was an officer, regardless of whether he knew if Wagerman was acting with an official purpose, it automatically precluded self defense. We disagree. As our standard of review requires, we must look at the jury instructions as a whole. The following sentence of the instruction clarifies that "[a] person has no right to resist arrest, even if it turns out that the arrest was unlawful, if the person is aware [of] the official identity **and** purpose of the arresting officer." Appx. 1372–73 (emphasis added). Taken together—and not as "particular sentence[s] or paragraph[s] in isolation"—these instructions provided the jury with a complete framework to evaluate Thomas's theory of self-defense. *Jimenez*, 513 F.3d at 74–75 (quoting *Leahy*, 445 F.3d at 642).

Furthermore, the latter portion of the self-defense instruction directed the jury to consider whether Thomas "reasonably believed he was the subject of a hostile, imminent or sexual attack." Appx. 1372–73. By returning a guilty verdict, the jury necessarily rejected as unreasonable

4

Thomas's claim that he believed he was being sexually assaulted—a claim that strained credulity in light of the evidence. The interaction occurred in a federal courthouse with multiple uniformed officers present, and the timeline for when the alleged attack occurred lasted only three seconds. Thomas's assertion that he interpreted Wagerman's attempt to detain him as a sexual advance, complete with claims about feeling an "erect penis" and fears about Wagerman "stick[ing] his tongue in [his] ear," was patently unreasonable to the jury in this context. Appx. 1255. The security footage captured the entire encounter, allowing the jury to evaluate the objective reasonableness of Thomas's purported belief. Thus, when looking at the instructions as a whole, the instructions fairly submitted the self-defense claim to the jury.

## III.

For the foregoing reasons, we will affirm the judgment of conviction and sentence imposed by the District Court.